IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF KANSAS


RICK SNOE,

                 Plaintiff,

vs.                                      Case No. 10-1428-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                 Defendant.


                    MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

                              1

conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  <u>Ray
v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
<u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993).   At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy.  Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner
meets this burden if the decision is supported by substantial
evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

**II.  History of case**

On April 23, 2010, administrative law judge (ALJ) Patricia
E. Hartman issued her decision (R. at 8-17).  Plaintiff alleges
that he has been disabled since November 10, 2006 (R. at 8).
Plaintiff is insured for disability insurance benefits through
December 31, 2011 (R. at 10).  At step one, the ALJ found that
plaintiff has not engaged in substantial gainful activity since
his alleged onset date (R. at 10).  At step two, the ALJ found
that plaintiff had the following severe impairments: asthma,

4

obesity, mild degenerative disc disease, degenerative joint disease of the knees, and gout (R. at 10).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11).  After determining plaintiff's RFC (R. at 11-12), the ALJ found at step four that plaintiff is able to perform past relevant work as an office manager (R. at 15).  In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 16).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

## III.  Are the ALJ's RFC findings supported by substantial evidence?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The record includes four opinions from medical sources.  The first opinion is from Dr. Spencer, who performed a consultative examination on the plaintiff on March 28, 2008 (R. at 272-275).

Dr. Spencer concluded as follows:

> Because of his back and joint symptoms and
> [h]is massive obesity I doubt that he could
> performed heavy physical labor or perform
> work that required prolonged walking,
> climbing more than a few steps occasionally
> throughout the day or anything that required
> a great deal of agility or athleticism.
> Historically it sounds like he cannot sit for
> long periods of time, but could likely
> perform sedentary work as long as he was able
> to occasionally move about and change
> positions.

(R. at 275).  The ALJ found that the opinions of Dr. Spencer were

consistent with the "overall evidence of record" and plaintiff's

activities; the ALJ accordingly gave "great" weight to his

opinions (R. at 14).

The second medical opinion was from the state agency medical

consultant who reviewed the medical records, but did not examine

the plaintiff.  This opinion, dated April 2, 2008, and affirmed

by Dr. Goering on July 1, 2008, limited plaintiff to less than

light work with occasional postural limitations (R. at 276-283,

419).  The ALJ accorded "little" weight to this opinion (R. at

14).

The third medical opinion, dated June 16, 2008, is from a

treating physician, Dr. Legler; Dr. Legler opined that plaintiff

is unable to sit, stand, and/or walk for an 8 hour workday.  Dr.

Legler also set forth numerous postural, manipulative, and

environmental limitations, and indicated that plaintiff would

need to lie down 2-3 times in an 8 hour workday (R. at 300-301).

7

The ALJ stated that the opinions of Dr. Legler were not supported by the other medical evidence of record or plaintiff's daily activities; the ALJ therefore indicated that she was according "little" weight to Dr. Legler's opinions (R. at 15).

The fourth and final medical opinion was from Dr. Carson, another treatment provider.  His opinion, dated December 3, 2009, also indicates that plaintiff cannot sit, stand and/or walk for an 8 hour workday.  He also set forth numerous postural, manipulative and environmental factors, and indicated that she would need to lie down frequently during an 8 hour workday (R. at 404-405).  The ALJ stated that the record did not reflect Dr. Carson's relationship with the plaintiff and did not indicate how long he had treated the plaintiff; the ALJ also noted that it appeared that Dr. Carson based his determination on plaintiff's responses.  Therefore, the ALJ accorded "little" weight to his opinions (R. at 15).

The ALJ discounted the opinions of Dr. Carson because, according to the ALJ, the record does not reflect Dr. Carson's relationship with the plaintiff and does not indicate how long he had been treating the plaintiff (R. at 15).  However, the medical records indicate that Dr. Carson began treating plaintiff sometime in the fall of 2008 (R. at 337-338, 332).  Dr. Carson continued to treat plaintiff in 2009 (e.g., R. at 331, 328, 357, 317, 320).  The records clearly establish that Dr. Carson had an

8

ongoing treatment relationship with the plaintiff.  Even
defendant, in his brief, acknowledged the ongoing treatment
relationship by Dr. Carson, citing to numerous treatment records
from November 2008 through October 2009 (Doc. 14 at 11-12).
Thus, the finding of the ALJ that the record does not reflect Dr.
Carson's relationship with the plaintiff or how long he had
treated the plaintiff is clearly erroneous.  The court cannot
speculate on whether the ALJ would have reached the same
conclusion regarding the weight he accorded to the opinions of
Dr. Carson in the absence of his erroneous statement that the
record does not reflect Dr. Carson's relationship with the
plaintiff or how long he had treated the plaintiff.  Coleman v.
Astrue, 2010 WL 4942103 at *6 (D. Kan. Nov. 30, 2010); Dickson v.
Commissioner of Social Security, 2009 WL 3075655 at *4 (W.D.
Okla. Sept. 22, 2009).  The ALJ clearly erred by failing to
consider the opinions of Dr. Carson in light of his treatment of
the plaintiff.

     The ALJ also found that the opinions of Dr. Legler, another
treating physician, were not supported by the other medical
evidence of record or plaintiff's daily activities.  However,
other than making this conclusory statement, the ALJ makes no
reference to those portions of the medical records which do not
support the opinions of Dr. Legler.  The medical records do
include the opinions of Dr. Carson, another treatment provider,

who found limitations similar to or even more severe than those
set forth by Dr. Legler.  As noted above, the ALJ erred by
failing to acknowledge that the medical records do indicate that
Dr. Carson had a treatment relationship with the plaintiff.

On remand, if the ALJ finds that the medical records do not
support, or are inconsistent with the limitations set forth by
Dr. Legler, the ALJ should identify what in the medical records
do not support or are inconsistent with the limitations set forth
by Dr. Legler.  Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir.
2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).
Furthermore, the ALJ must not consider the opinions of these
treating sources in isolation, but those opinions must be
considered in light of the entire evidentiary record, including
the opinions and assessments of other treating sources.  The
court is concerned with the necessarily incremental effect of
each individual report or opinion by a source on the aggregate
assessment of the evidentiary record, and, in particular, on the
evaluation of reports and opinions of other treating sources, and
the need for the ALJ to take this into consideration.  See Lackey
v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5,
2005).[1]

_____

[1]The treating physician opinions are not entitled to
controlling weight in this case because there is other
substantial evidence (i.e., other medical opinion evidence) in
the case that disputes their opinions.  However, they must be
considered after consideration of other factors, including the

10

The ALJ also indicated that she discounted the opinions of
Dr. Legler because they were not supported by plaintiff's daily
activities.   However, a review of the ALJ decision does not set
forth daily activities by the plaintiff which are clearly
inconsistent with Dr. Legler's opinions.   In fact, the ALJ
decision noted plaintiff's testimony that he had to lie down 5-7
hours a day, not including nighttime sleeping (R. at 14).   This
is consistent with the opinions of Dr. Legler and Dr. Carson, who
both opined that plaintiff would have to lie down on numerous
occasions during a workday (R. at 301, 405).

Plaintiff, in his brief, cited to authority, previously set
forth in this opinion, stating that the ALJ has a duty to link
his RFC findings with specific evidence in the record (Doc. 11 at
11).   The ALJ indicated that she gave great weight to the
opinions of the Dr. Spencer in determining plaintiff's RFC, and gave
little weight to the other medical source opinions.   Dr. Spencer
stated that plaintiff cannot sit for long periods of time, but
could likely perform sedentary work as long as he could
occasionally move about and change positions (R. at 275).   The
ALJ asserted, without any citation to authority, that this need

---

fact of examination, the length of the treatment relationship and
frequency of examination, and the nature and extent of the
treatment relationship. See 20 C.F.R. § 404.1527(d)(1)-(2).   As
noted above, the ALJ clearly erred by failing to consider the
nature and extent of the treatment relationship that Dr. Carson
had with the plaintiff.

to occasionally move about and change positions would be
adequately accommodated by normal work breaks and lunch (R. at
14). The ALJ did not provide to the vocational expert (VE) this
limitation set forth by Dr. Spencer.

SSR 96-9p explains the Social Security Administration's
policies regarding the impact of a RFC assessment for less than a
full range of sedentary work. On the issue of alternating
sitting and standing, it states the following:

> An individual may need to alternate the
> required sitting of sedentary work by
> standing (and, possibly, walking)
> periodically. Where this need cannot be
> accommodated by scheduled breaks and a lunch
> period, the occupational base for a full
> range of unskilled sedentary work will be
> eroded. The extent of the erosion will depend
> on the facts in the case record, such as the
> frequency of the need to alternate sitting
> and standing and the length of time needed to
> stand. **The RFC assessment must be specific as
> to the frequency of the individual's need to
> alternate sitting and standing.** It may be
> especially useful in these situations to
> consult a vocational resource in order to
> determine whether the individual is able to
> make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added). As this court
previously stated in the case of <u>Cowen v. Astrue</u>, Case No. 09-
1206-SAC (D. Kan. July 21, 2010 at 21-22), the use of the word
"occasionally" is not ambiguous, but provides the needed
specificity for the VE to determine what jobs plaintiff can
perform. According to the <u>Selected Characteristics of
Occupations Defined in the Revised Dictionary of Occupational</u>

Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3), "occasionally"
involves an activity existing up to 1/3 of the time, "frequently"
involves an activity existing from 1/3 to 2/3 of the time, and
"constantly" involves an activity or condition that exists 2/3 or
more of the time.  Occasionally is not an ambiguous term, but is
clearly and specifically defined in the SCO.  Therefore, on
remand, the ALJ should be specific in her RFC assessment about
the frequency of plaintiff's need to move about and change
positions.

The ALJ indicated that she gave little weight to the
opinions of plaintiff's two treatment providers, Dr. Legler and
Dr. Carson (R. at 14-15), but gave great weight to the opinions
of Dr. Spencer (R. at 14).  The ALJ, in her RFC findings,
included numerous postural and environmental limitations (R. at
11-12).[2]  None of these limitations are included in Dr. Spencer's
report.  However, both Dr. Legler and Dr. Carson included
limitations in these categories in their reports (R. at 301,
405).  In fact, only Dr. Carson found that plaintiff could never
climb, stoop, kneel or crouch (R. at 405).  Even though the ALJ

---

[2]Specifically, the ALJ found that plaintiff cannot climb
ladders, ropes or scaffolds, or do any balancing kneeling,
crouching, crawling, or stooping.  He cannot use foot controls or
have concentrated exposure to fumes, dusts, chemical or extreme
cold or heat.  He cannot work with dangerous unprotected
machinery, at unprotected heights, or use vibrating tools, and
requires the use of a cane when standing or walking (R. at 11-
12).

found that plaintiff could never balance or crawl, Dr. Legler and
Dr. Carson indicated that plaintiff could occasionally balance
and crawl (R. at 301, 405).  Furthermore, only Dr. Legler and Dr.
Carson found that plaintiff had environmental limitations (i.e.,
limitations in exposure to fumes, dusts, chemicals, extreme cold
or heat, work with dangerous unprotected machinery, at
unprotected heights, or using vibratory tools).

     Thus, without explanation, the ALJ included in her RFC
findings many of the limitations set forth by Dr. Legler and Dr.
Carson.  None of these postural or environmental limitations were
included or mentioned in Dr. Spencer's report.  However, again,
without explanation, the ALJ did not include other limitations by
the two treatment providers, including their opinions that
plaintiff can only occasionally reach, handle, finger or feel (in
fact, Dr. Spencer opined that plaintiff could never finger) (R.
at 301, 405).

     SSR 96-8p is defendant's own requirement, a ruling
promulgated by the Commissioner.  SSR rulings, as noted above,
are binding on the Commissioner.  However, contrary to the clear
requirements of SSR 96-8p, the ALJ did not provide a narrative
discussion describing how the evidence supported her RFC
findings.  The ALJ's RFC findings include numerous postural and
environmental limitations not contained in the report of Dr.
Spencer, even though she gave Dr. Spencer's report great weight.

14

However, despite giving the reports of Dr. Legler and Dr. Carson little weight, she included many of the postural and environmental limitations contained in their reports.  The ALJ even determined that plaintiff could not balance or crawl, although both Dr. Legler and Dr. Carson indicated that plaintiff could occasionally perform those activities.  Furthermore, again without any explanation, she failed to include manipulative limitations contained in their reports.[3]  In conclusion, the court cannot ascertain what relative weight was given to each medical opinion, or the reasons for adopting certain limitations contained in the reports of Dr. Legler and Dr. Carson, but rejecting other limitations.

In Kency v. Barnhart, Case No. 08-1190-MLB (D. Kan. Nov. 16, 2005), the ALJ made RFC findings which were consistent with some of the limitations set forth by Dr. Sloo, but failed, without

---

[3]The importance of excluding, without explanation, the opinions of Dr. Legler and Dr. Carson regarding plaintiff's manipulative limitations (that plaintiff is limited to only occasional reaching and handling and either occasional or no ability to finger) can be demonstrated when looking at the requirements of plaintiff's prior work and other work the ALJ found that plaintiff could perform in the national economy.  The past job of office manager (DICOT 169.167-034) requires the ability to frequently reach, handle and finger.  The ALJ identified three other jobs that plaintiff could perform: 1) an order clerk (DICOT 209.567-014); this job requires the ability to frequently reach, handle and finger; 2) a credit authorizer (DICOT 249.367-022); this job requires a frequent ability to reach and handle; and 3) a document preparer (DICOT 249.587-018); this job requires a frequent ability to reach, handle and finger).  1991 WL 647430, 671794, 672327, 672349.

explanation, to include numerous other limitations set forth by
Dr. Sloo.  The court held that it was not at all clear how the
RFC, as a whole, was derived, and that the decision was
unreviewable because the court was unable to discern how the ALJ
reached his decision (Doc. 21 at 7-8).  As in <u>Kency</u>, in the case
before the court, the court is unable to discern how the RFC, as
a whole, was derived.  <u>Frye v. Astrue</u>, Case No. 10-1251-SAC (D.
Kan. July 6, 2011; Doc. 13 at 9).  The failure to link the RFC
determination to specific and substantial evidence in the record
constitutes reversible error.  <u>Frye</u>, (Doc. 13 at 9-10); <u>Brown v.
Barnhart</u>, 362 F. Supp.2d 1254, 1260 (D. Kan. 2005); <u>Billups v.
Barnhart</u>, 322 F. Supp.2d 1220, 1228 (D. Kan. 2004).  This case
shall therefore be remanded in order for the ALJ to make RFC
findings that comply with SSR 96-8p.  On remand, the ALJ shall
comply with SSR 96-8p by including a narrative discussion setting
forth how the evidence supports her conclusions.

**IV.  Did the ALJ fail to consider plaintiff's obesity in
accordance with SSR 02-1p?**

SSR 02-1p (evaluation of obesity) states that in the absence
of evidence to the contrary, the Commissioner will accept a
diagnosis of obesity given by a treating source or a consultative
examiner.  2002 WL 32255132 at *4.  It further states that, when
assessing RFC, obesity may cause limitations of various
functions, including exertional, postural and social functions.

Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment.  Obesity may also affect the claimant's ability to sustain a function over time.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  2002 WL 32255132 at *7.  The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

The ALJ found obesity to be a severe impairment at step two, and stated that she considered the effects of plaintiff's obesity in accordance with SSR 02-1p (R. at 10, 12).  Dr. Spencer stated that plaintiff's limitations were due to his back and joint symptoms and "massive obesity" (R. at 275).  The state agency assessment indicated that plaintiff had limitations due to "morbid obesity" and minor lumbar spine changes (R. at 281). Plaintiff's treatment records from Dr. Legler and Dr. Carson also reference plaintiff's obesity or morbid obesity (R. at 340, 342). In light of the fact that plaintiff's obesity was referenced and considered by all the medical sources who provided opinions regarding plaintiff's limitations, the court finds no clear error by the ALJ in her consideration of plaintiff's obesity.

17

**V.  Did the ALJ err in her consideration of plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in her credibility findings (Doc. 11 at 20-23).  The court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

**VI.  Did the ALJ err in his step four findings?**

In his decision, the ALJ, at step four, found that plaintiff could perform his past work as an office manager (R. at 15).  In the alternative, the ALJ found at step five that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 15-16).  Again, the court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

On remand, the ALJ shall make step four findings in accordance with the case law and agency rulings.[4]  However, the

_____

[4]At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  Henrie v. United States Dep't

18

court would note that when the ALJ makes proper findings at step
five, any error at step four will be deemed harmless error.
Martinez v. Astrue, 2009 WL 721687 at *3 (10th Cir. Mar. 19,
2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir.
1994).

IT IS THEREFORE ORDERED that the judgment of the
Commissioner is reversed and remanded pursuant to sentence four
of 42 U.S.C. § 405(g) for further proceedings consistent with
this memorandum and order.

Dated this 16th day of November 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final
phase of the analysis, the ALJ determines whether the claimant
has the ability to meet the job demands found in phase two
despite the mental and/or physical limitations found in phase
one.  At each of these three phases, the ALJ must make specific
findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.
2007);  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).
An ALJ can comply with these requirements if he quotes the VE's
testimony with approval in support of his own findings at phases
two and three of the step four analysis.  Doyal v. Barnhart, 331
F.3d 758, 760-761 (10th Cir. 2003).  When the ALJ fails to make
findings at phase two of step four regarding the physical and/or
mental demands of plaintiff's past work, the case will be
remanded for a proper step four analysis.  Bowman v. Astrue, 511
F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d
at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-
1185 (D. Kan. 2008)(Belot, D.J.).