IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICK SNOE,

      Plaintiff,

vs.            Case No. 10-1428-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

      Defendant.

MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 23, 2010, administrative law judge (ALJ) Patricia E. Hartman issued her decision (R. at 8-17). Plaintiff alleges that he has been disabled since November 10, 2006 (R. at 8). Plaintiff is insured for disability insurance benefits through December 31, 2011 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date (R. at 10). At step two, the ALJ found that plaintiff had the following severe impairments: asthma,

obesity, mild degenerative disc disease, degenerative joint disease of the knees, and gout (R. at 10).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 11).  After determining plaintiff's RFC (R. at 11-12), the ALJ found at step four that plaintiff is able to perform past relevant work as an office manager (R. at 15).  In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 16).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

**III.  Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,

1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The record includes four opinions from medical sources.  The first opinion is from Dr. Spencer, who performed a consultative examination on the plaintiff on March 28, 2008 (R. at 272-275).

Dr. Spencer concluded as follows:

> Because of his back and joint symptoms and
> [h]is massive obesity I doubt that he could
> performed heavy physical labor or perform
> work that required prolonged walking,
> climbing more than a few steps occasionally
> throughout the day or anything that required
> a great deal of agility or athleticism.
> Historically it sounds like he cannot sit for
> long periods of time, but could likely
> perform sedentary work as long as he was able
> to occasionally move about and change
> positions.

(R. at 275). The ALJ found that the opinions of Dr. Spencer were consistent with the "overall evidence of record" and plaintiff's activities; the ALJ accordingly gave "great" weight to his opinions (R. at 14).

The second medical opinion was from the state agency medical consultant who reviewed the medical records, but did not examine the plaintiff. This opinion, dated April 2, 2008, and affirmed by Dr. Goering on July 1, 2008, limited plaintiff to less than light work with occasional postural limitations (R. at 276-283, 419). The ALJ accorded "little" weight to this opinion (R. at 14).

The third medical opinion, dated June 16, 2008, is from a treating physician, Dr. Legler; Dr. Legler opined that plaintiff is unable to sit, stand, and/or walk for an 8 hour workday. Dr. Legler also set forth numerous postural, manipulative, and environmental limitations, and indicated that plaintiff would need to lie down 2-3 times in an 8 hour workday (R. at 300-301).

The ALJ stated that the opinions of Dr. Legler were not supported by the other medical evidence of record or plaintiff's daily activities; the ALJ therefore indicated that she was according "little" weight to Dr. Legler's opinions (R. at 15).

The fourth and final medical opinion was from Dr. Carson, another treatment provider. His opinion, dated December 3, 2009, also indicates that plaintiff cannot sit, stand and/or walk for an 8 hour workday. He also set forth numerous postural, manipulative and environmental factors, and indicated that she would need to lie down frequently during an 8 hour workday (R. at 404-405). The ALJ stated that the record did not reflect Dr. Carson's relationship with the plaintiff and did not indicate how long he had treated the plaintiff; the ALJ also noted that it appeared that Dr. Carson based his determination on plaintiff's responses. Therefore, the ALJ accorded "little" weight to his opinions (R. at 15).

The ALJ discounted the opinions of Dr. Carson because, according to the ALJ, the record does not reflect Dr. Carson's relationship with the plaintiff and does not indicate how long he had been treating the plaintiff (R. at 15). However, the medical records indicate that Dr. Carson began treating plaintiff sometime in the fall of 2008 (R. at 337-338, 332). Dr. Carson continued to treat plaintiff in 2009 (e.g., R. at 331, 328, 357, 317, 320). The records clearly establish that Dr. Carson had an

8

ongoing treatment relationship with the plaintiff. Even defendant, in his brief, acknowledged the ongoing treatment relationship by Dr. Carson, citing to numerous treatment records from November 2008 through October 2009 (Doc. 14 at 11-12). Thus, the finding of the ALJ that the record does not reflect Dr. Carson's relationship with the plaintiff or how long he had treated the plaintiff is clearly erroneous. The court cannot speculate on whether the ALJ would have reached the same conclusion regarding the weight he accorded to the opinions of Dr. Carson in the absence of his erroneous statement that the record does not reflect Dr. Carson's relationship with the plaintiff or how long he had treated the plaintiff. Coleman v. Astrue, 2010 WL 4942103 at *6 (D. Kan. Nov. 30, 2010); Dickson v. Commissioner of Social Security, 2009 WL 3075655 at *4 (W.D. Okla. Sept. 22, 2009). The ALJ clearly erred by failing to consider the opinions of Dr. Carson in light of his treatment of the plaintiff.

The ALJ also found that the opinions of Dr. Legler, another treating physician, were not supported by the other medical evidence of record or plaintiff's daily activities. However, other than making this conclusory statement, the ALJ makes no reference to those portions of the medical records which do not support the opinions of Dr. Legler. The medical records do include the opinions of Dr. Carson, another treatment provider,

9

who found limitations similar to or even more severe than those set forth by Dr. Legler.  As noted above, the ALJ erred by failing to acknowledge that the medical records do indicate that Dr. Carson had a treatment relationship with the plaintiff.

On remand, if the ALJ finds that the medical records do not support, or are inconsistent with the limitations set forth by Dr. Legler, the ALJ should identify what in the medical records do not support or are inconsistent with the limitations set forth by Dr. Legler.  Krauser v. Astrue, 638 F.3d 1324, 1331 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004).  Furthermore, the ALJ must not consider the opinions of these treating sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other treating sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).[1]

---

[1] The treating physician opinions are not entitled to controlling weight in this case because there is other substantial evidence (i.e., other medical opinion evidence) in the case that disputes their opinions.  However, they must be considered after consideration of other factors, including the

The ALJ also indicated that she discounted the opinions of Dr. Legler because they were not supported by plaintiff's daily activities. However, a review of the ALJ decision does not set forth daily activities by the plaintiff which are clearly inconsistent with Dr. Legler's opinions. In fact, the ALJ decision noted plaintiff's testimony that he had to lie down 5-7 hours a day, not including nighttime sleeping (R. at 14). This is consistent with the opinions of Dr. Legler and Dr. Carson, who both opined that plaintiff would have to lie down on numerous occasions during a workday (R. at 301, 405).

Plaintiff, in his brief, cited to authority, previously set forth in this opinion, stating that the ALJ has a duty to link his RFC findings with specific evidence in the record (Doc. 11 at 11). The ALJ indicated that she gave great weight to the opinions of Dr. Spencer in determining plaintiff's RFC, and gave little weight to the other medical source opinions. Dr. Spencer stated that plaintiff cannot sit for long periods of time, but could likely perform sedentary work as long as he could occasionally move about and change positions (R. at 275). The ALJ asserted, without any citation to authority, that this need

---

fact of examination, the length of the treatment relationship and frequency of examination, and the nature and extent of the treatment relationship. See 20 C.F.R. § 404.1527(d)(1)-(2). As noted above, the ALJ clearly erred by failing to consider the nature and extent of the treatment relationship that Dr. Carson had with the plaintiff.

11

to occasionally move about and change positions would be adequately accommodated by normal work breaks and lunch (R. at 14).  The ALJ did not provide to the vocational expert (VE) this limitation set forth by Dr. Spencer.

SSR 96-9p explains the Social Security Administration's policies regarding the impact of a RFC assessment for less than a full range of sedentary work.  On the issue of alternating sitting and standing, it states the following:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. **The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.** It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).  As this court previously stated in the case of Cowen v. Astrue, Case No. 09-1206-SAC (D. Kan. July 21, 2010 at 21-22), the use of the word "occasionally" is not ambiguous, but provides the needed specificity for the VE to determine what jobs plaintiff can perform.  According to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational

Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time.  Occasionally is not an ambiguous term, but is clearly and specifically defined in the SCO.  Therefore, on remand, the ALJ should be specific in her RFC assessment about the frequency of plaintiff's need to move about and change positions.

The ALJ indicated that she gave little weight to the opinions of plaintiff's two treatment providers, Dr. Legler and Dr. Carson (R. at 14-15), but gave great weight to the opinions of Dr. Spencer (R. at 14).  The ALJ, in her RFC findings, included numerous postural and environmental limitations (R. at 11-12).[2]  None of these limitations are included in Dr. Spencer's report.  However, both Dr. Legler and Dr. Carson included limitations in these categories in their reports (R. at 301, 405).  In fact, only Dr. Carson found that plaintiff could never climb, stoop, kneel or crouch (R. at 405).  Even though the ALJ

---

[2]Specifically, the ALJ found that plaintiff cannot climb ladders, ropes or scaffolds, or do any balancing kneeling, crouching, crawling, or stooping.  He cannot use foot controls or have concentrated exposure to fumes, dusts, chemical or extreme cold or heat.  He cannot work with dangerous unprotected machinery, at unprotected heights, or use vibrating tools, and requires the use of a cane when standing or walking (R. at 11-12).

13

found that plaintiff could never balance or crawl, Dr. Legler and Dr. Carson indicated that plaintiff could occasionally balance and crawl (R. at 301, 405).  Furthermore, only Dr. Legler and Dr. Carson found that plaintiff had environmental limitations (i.e., limitations in exposure to fumes, dusts, chemicals, extreme cold or heat, work with dangerous unprotected machinery, at unprotected heights, or using vibratory tools).

Thus, without explanation, the ALJ included in her RFC findings many of the limitations set forth by Dr. Legler and Dr. Carson.  None of these postural or environmental limitations were included or mentioned in Dr. Spencer's report.  However, again, without explanation, the ALJ did not include other limitations by the two treatment providers, including their opinions that plaintiff can only occasionally reach, handle, finger or feel (in fact, Dr. Spencer opined that plaintiff could never finger) (R. at 301, 405).

SSR 96-8p is defendant's own requirement, a ruling promulgated by the Commissioner.  SSR rulings, as noted above, are binding on the Commissioner.  However, contrary to the clear requirements of SSR 96-8p, the ALJ did not provide a narrative discussion describing how the evidence supported her RFC findings.  The ALJ's RFC findings include numerous postural and environmental limitations not contained in the report of Dr. Spencer, even though she gave Dr. Spencer's report great weight.

However, despite giving the reports of Dr. Legler and Dr. Carson little weight, she included many of the postural and environmental limitations contained in their reports. The ALJ even determined that plaintiff could not balance or crawl, although both Dr. Legler and Dr. Carson indicated that plaintiff could occasionally perform those activities. Furthermore, again without any explanation, she failed to include manipulative limitations contained in their reports.[3] In conclusion, the court cannot ascertain what relative weight was given to each medical opinion, or the reasons for adopting certain limitations contained in the reports of Dr. Legler and Dr. Carson, but rejecting other limitations.

In <u>Kency v. Barnhart</u>, Case No. 08-1190-MLB (D. Kan. Nov. 16, 2005), the ALJ made RFC findings which were consistent with some of the limitations set forth by Dr. Sloo, but failed, without

---

[3]The importance of excluding, without explanation, the opinions of Dr. Legler and Dr. Carson regarding plaintiff's manipulative limitations (that plaintiff is limited to only occasional reaching and handling and either occasional or no ability to finger) can be demonstrated when looking at the requirements of plaintiff's prior work and other work the ALJ found that plaintiff could perform in the national economy. The past job of office manager (DICOT 169.167-034) requires the ability to frequently reach, handle and finger. The ALJ identified three other jobs that plaintiff could perform: 1) an order clerk (DICOT 209.567-014); this job requires the ability to frequently reach, handle and finger; 2) a credit authorizer (DICOT 249.367-022); this job requires a frequent ability to reach and handle; and 3) a document preparer (DICOT 249.587-018); this job requires a frequent ability to reach, handle and finger). 1991 WL 647430, 671794, 672327, 672349.

explanation, to include numerous other limitations set forth by Dr. Sloo. The court held that it was not at all clear how the RFC, as a whole, was derived, and that the decision was unreviewable because the court was unable to discern how the ALJ reached his decision (Doc. 21 at 7-8). As in Kency, in the case before the court, the court is unable to discern how the RFC, as a whole, was derived. Frye v. Astrue, Case No. 10-1251-SAC (D. Kan. July 6, 2011; Doc. 13 at 9). The failure to link the RFC determination to specific and substantial evidence in the record constitutes reversible error. Frye, (Doc. 13 at 9-10); Brown v. Barnhart, 362 F. Supp.2d 1254, 1260 (D. Kan. 2005); Billups v. Barnhart, 322 F. Supp.2d 1220, 1228 (D. Kan. 2004). This case shall therefore be remanded in order for the ALJ to make RFC findings that comply with SSR 96-8p. On remand, the ALJ shall comply with SSR 96-8p by including a narrative discussion setting forth how the evidence supports her conclusions.

**IV. Did the ALJ fail to consider plaintiff's obesity in accordance with SSR 02-1p?**

SSR 02-1p (evaluation of obesity) states that in the absence of evidence to the contrary, the Commissioner will accept a diagnosis of obesity given by a treating source or a consultative examiner. 2002 WL 32255132 at *4. It further states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions.

Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment.  Obesity may also affect the claimant's ability to sustain a function over time.  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  2002 WL 32255132 at *7.  The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

     The ALJ found obesity to be a severe impairment at step two, and stated that she considered the effects of plaintiff's obesity in accordance with SSR 02-1p (R. at 10, 12).  Dr. Spencer stated that plaintiff's limitations were due to his back and joint symptoms and "massive obesity" (R. at 275).  The state agency assessment indicated that plaintiff had limitations due to "morbid obesity" and minor lumbar spine changes (R. at 281). Plaintiff's treatment records from Dr. Legler and Dr. Carson also reference plaintiff's obesity or morbid obesity (R. at 340, 342). In light of the fact that plaintiff's obesity was referenced and considered by all the medical sources who provided opinions regarding plaintiff's limitations, the court finds no clear error by the ALJ in her consideration of plaintiff's obesity.

**V. Did the ALJ err in her consideration of plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in her credibility findings (Doc. 11 at 20-23). The court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

**VI. Did the ALJ err in his step four findings?**

In his decision, the ALJ, at step four, found that plaintiff could perform his past work as an office manager (R. at 15). In the alternative, the ALJ found at step five that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 15-16). Again, the court will not reach this issue because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

On remand, the ALJ shall make step four findings in accordance with the case law and agency rulings.[4] However, the

---

[4]At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't

court would note that when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error. Martinez v. Astrue, 2009 WL 721687 at *3 (10th Cir. Mar. 19, 2009); see Murrell v. Shalala, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 16th day of November 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

of HHS, 13 F.3d 359, 361 (1993).  Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  At each of these three phases, the ALJ must make specific findings.  Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). An ALJ can comply with these requirements if he quotes the VE's testimony with approval in support of his own findings at phases two and three of the step four analysis.  Doyal v. Barnhart, 331 F.3d 758, 760-761 (10th Cir. 2003).  When the ALJ fails to make findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis.  Bowman v. Astrue, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); Frantz v. Astrue, 509 F.3d at 1303-1304; Kilpatrick v. Astrue, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).